Michael W. Malter (SBN 96533)
Julie H. Rome-Banks (SBN 142364)
David B. Rao (SBN 103147)
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
Tel: (408) 295-1700
Fax: (408) 295-1531
Email: Michael@bindermalter.com
　　　　Julie@bindermalter.com
　　　　David@bindermalter.com

Jeffrey S. Holman (SBN 197824)
HOLMAN KAYE LAW GROUP
220 State Street, Suite A
Los Altos, CA 94022
Tel: (650) 949-1660
Fax: (650) 949-5024
Email: jeff@holmankaye.com

Attorneys for Plaintiff
JEAN SCHOTT

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, DIVISION 5

| | |
|---|---|
| In re:<br><br>CRAIG A. COUSINS and AGNES E. SMITH,<br><br>　　　　　　　　　Debtors.<br><br>JEAN SCHOTT,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>CRAIG A. COUSINS,<br><br>　　　　　　　　　Defendant. | Case No.: 17-52821-MEH<br><br>Chapter 7<br><br>Adver. Proc. |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**　　　　　　　　　　PAGE 1

# COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT
(11 U.S.C. §523(a)(2)(A), (a)(6))

Comes now Plaintiff Jean Schott ("Plaintiff") and does allege and complain of the Debtor and Defendant Craig A. Cousins ("Defendant") as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334. Venue is proper before this Court pursuant to 28 U.S.C. §1409 by virtue of the Chapter 7 case pending before the United States Bankruptcy Court for the Northern District of California [In re Craig A. Cousins and Agnes E. Smith, Bankruptcy No. 17-52821-MEH].

2. This Complaint initiates an Adversary Proceeding as contemplated under Rule 7001(6) of the Federal Rules of Bankruptcy Procedure. This controversy is a "core proceeding" as that term is defined in 28 U.S.C. §157(b)(2)(I), and Plaintiff consents to entry of a final judgment by the Bankruptcy Court.

## GENERAL ALLEGATIONS

3. Plaintiff is informed and believes and on that basis alleges that Cover Story LLC ("Cover Story) is and at all relevant times was a limited liability company organized under the laws of the State of California with its principal place of business in Santa Clara County, California.

4. Plaintiff is informed and believes and on that basis alleges that Defendant is and at all relevant times was the sole member and manager of Cover Story.

5. Plaintiff is informed and believes and on that basis alleges that Defendant, through Cover Story, operated a retail business with locations in Los Altos, California, and Los Gatos, California, that sold home furnishings and décor and provided interior

design and decoration services. Although no fictitious business statement was ever recorded, Defendant conducted the retail activity under the name Cover Story (without any reference to a status as an LLC).

6. Plaintiff and Defendant have known each other since approximately 1997, and Plaintiff became a regular customer of Defendant's Cover Story business in Los Altos, California, beginning around 2005. Prior to entering into the Contracts described below, Plaintiff and Defendant had an intimate relationship. During one amorous exchange, Defendant told Plaintiff, "I feel safe with you."

7. Plaintiff is informed and believes and on that basis alleges that Defendant wanted to keep his relationship with Plaintiff secret and that Defendant did not want anyone in town to know that he and Plaintiff were seeing each other.

8. Defendant boasted to Plaintiff numerous times over the years about how profitable Cover Story was.

9. In or around May 2011, Plaintiff visited the Cover Story store in Los Altos. Defendant told Plaintiff he had something he wanted to talk with Plaintiff about, and he asked her to step outside. The two went outside and sat together on the bench in front of the store. Defendant told Plaintiff that a number of his customers had asked over the years about possibly investing in Cover Story and perhaps opening one or more additional stores. Defendant said that based on this, he had decided to open a second Cover Story retail store in Los Gatos, California. Defendant further stated to Plaintiff that he was approaching a "few special customers" with an opportunity to invest, with an option for partial ownership or profit sharing in the future. Defendant further stated to Plaintiff that the investment would be in the form of a loan that could be exchanged into

an ownership stake in Cover Story "once a business entity was formed," and Defendant said he needed to speak with his accountant to figure out what exactly that would look like. Defendant further told Plaintiff that he was asking for $25,000 each from a maximum of ten investors. Plaintiff responded that she would need a few days to think about it.

10. On May 22, 2011, Defendant sent Plaintiff an email in which he (a) thanked her for her "interest in the growth of Cover Story", (b) indicated he was raising "additional capitol (sic) to go toward the opening of the second location in Los Gatos", and (c) set out the terms of the "investment/loan," which included the amount, interest rate, term, and option to "convert the loan to shares." Defendant further stated in his email to Plaintiff that it would be "a very straightforward investment," and he asked Plaintiff to call him if she had any interest in "participating". The email was signed by "Craig Cousins ¶ Cover Story."

11. During his discussions with Plaintiff, Defendant described the investment as an opportunity to participate in the growth of Cover Story.

12. Plaintiff was attracted by the 7% interest rate that was offered on the loan, but Plaintiff was also interested in investing in Cover Story because of the potential to become a partial owner and/or share in the profits of the business.

13. Subsequently, Defendant and Plaintiff discussed having Plaintiff make a $50,000 loan instead of $25,000, which Defendant told Plaintiff would make her the biggest investor in Cover Story. In conversations with Plaintiff, Defendant always referred to his lenders as "investors." Plaintiff understood Defendant's representation that Plaintiff would be the biggest investor in Cover Story to mean that Plaintiff's loan

would be the largest debt Defendant owed.

14. On or around June 16, 2011, Plaintiff met Defendant at a Peet's Coffee in Los Altos. During this meeting, Defendant told Plaintiff more about his plans to grow Cover Story, his preparations to open a second location in Los Gatos, and how Plaintiff's participation would contribute directly to that growth. Defendant also stated again that he was planning to form some type of business entity for the business, but he never informed Plaintiff that he was already operating the business through a separate entity.

15. Based upon all of Defendant's representations, it was Plaintiff's understanding that Defendant operated the Cover Story business as a sole proprietor, that the loan Plaintiff made would be an investment in the Cover Story business, that Plaintiff would essentially become a silent partner with Defendant in Cover Story once a business entity was established, and that Plaintiff's investment would be the largest debt that Defendant would owe. Plaintiff first learned of the existence of Cover Story LLC in or around March 2016 when the attorney she hired to help her in this matter did some initial investigation online.

16. On June 22, 2011, Defendant sent an email to Plaintiff with a draft promissory note detailing the terms of the loan. Defendant again thanked Plaintiff for her "interest in Cover Story," and signed the email as "Craig Cousins ¶ Cover Story."

17. On or about July 1, 2011, Defendant delivered to Plaintiff an executed promissory note (the "First Note"). A true copy of the First Note is attached as Exhibit "A" hereto and incorporated by reference as though fully set forth herein. Among other things, the First Note provided that Defendant would repay to Plaintiff the total amount

of $50,000, with interest at the rate of 7% percent per year from July 1, 2011. All principal and interest under the First Note were to be paid in full on June 24, 2013. The First Note also includes a provision that in the event any action is brought to collect any amounts owing, the prevailing party shall be entitled to recover its reasonable attorney fees and court costs.

18. In consideration of the First Note, Plaintiff lent $50,000 to Defendant on behalf of Cover Story on July 1, 2011. A true copy of the check by which Plaintiff lent these funds is attached as Exhibit "B" hereto and incorporated by reference as though fully set forth herein. In the memo line, Plaintiff indicated the check was for "Cover Story II (P. Note)." This reflected Plaintiff's understanding that she was lending money under the promissory note to the Cover Story business to help it open a second store in Los Gatos.

19. In or around September 2012, Defendant asked Plaintiff to invest additional money into Cover Story. Previously, Defendant had acknowledged to Plaintiff (after Plaintiff inquired after seeing a for sale sign) that he was being forced by his ex-wife to sell the 216 Main Street property where the Cover Story store in Los Altos was located. On September 17, 2012, Defendant sent Plaintiff and email in which Defendant stated that he would be "using the funds from the sale to pay off my investors by the end of 2012". Plaintiff understood Defendant's statement that he would be paying off his investors by the end of 2012 to mean that he would repay not only the First Note, but also the second potential investment the parties were then discussing. Defendant also stated that the investment would be "into Cover Story". As before, Defendant thanked Plaintiff for her interest in Cover Story and signed the email "Craig ¶

Cover Story." Defendant's representation that the sale of the 216 Main Street property would provide funds to repay his investors was a substantial factor in Plaintiff's decision to proceed with a second investment.

20. On September 19, 2012, Defendant sent Plaintiff another email about her potential second investment. In this email, Defendant thanked Plaintiff for her interest and support of Cover Story and told Plaintiff that her "additional investment" would allow him to build up his business inventory for the fourth quarter and provide him with financial flexibility during the Holiday Season. Defendant asked Plaintiff to let him know the terms of the loan, and he would prepare the documentation for the promissory note. Again, Defendant signed this email "Craig Cousins ¶ Cover Story."

21. On or about September 24, 2012, Defendant executed and delivered to Plaintiff another promissory note (the "Second Note"). A true copy of the Second Note is attached as Exhibit "C" hereto and incorporated by reference as though fully set forth herein. Among other things, the Second Note provided that Defendant would repay to Defendant the total amount of $50,000, with interest at the rate of 7% per year from September 24, 2012. All principal and interest under the Second Note were to be paid on October 1, 2013. The Second Note also includes a provision that in the event any action is brought to collect any amounts owing, the prevailing party shall be entitled to recover its reasonable attorney fees and court costs.

22. In consideration of the Second Note, Plaintiff lent to Defendant, on behalf of Cover Story, an additional $50,000 on September 24, 2012. A true copy of the check by which Plaintiff lent these funds is attached as Exhibit "D" hereto and incorporated by reference as though fully set forth herein. In the memo line, Plaintiff indicated that the

check was for "Cover Story – Blitz (#2 investment)". This reflected Plaintiff's understanding that her first loan and second loan were both investments in the Cover Story business. The word "Blitz" in the memo of Plaintiff's check referred to Defendant's efforts to build up inventory for the busy holiday season.

23. The First Note and Second Note are referred to together herein as the "Notes" or "Contracts" and each as a "Note" or "Contract."

24. Each Note recites the understanding of the parties that Defendant "intends to form…a business entity" to carry out the business of Cover Story. Each Note provided that "[Plaintiff] shall have the option, at the time this Note is due, to convert such loan into equity shares of such entity."

25. Defendant made payments to Plaintiff of $5,000 each on August 1, 2014, August 26, 2014, September 15, 2014, October 18, 2014, December 31, 2014, and November 16, 2015. In all, Plaintiff received from Defendant and/or Cover Story 6 payments totaling $30,000.

26. Except as set forth above, Defendant has failed and refused to pay the Notes to Plaintiff although demand has been made.

27. Prior to July 2013, Defendant and his former wife Julie F. Waters ("Julie") owned the real property located at 216 Main Street, Los Altos, California ("216 Main"), which was the location of the initial Cover Story store. On July 3, 2013, the 216 Main property was sold, and Defendant received net proceeds of approximately $458,000 from the sale. However, Defendant did not use the proceeds to repay any portion of the debt to Plaintiff.

28. Defendant's marriage to Julie was dissolved in accordance with a

Judgment of Dissolution entered on October 15, 2009, and a Status Only Judgment filed April 29, 2010, in Santa Clara County Superior Court Case Number 6-08-FL000204. The Judgment of Dissolution incorporated a Stipulated Judgment of Dissolution of Marriage. The Judgment of Dissolution and the incorporated Stipulated Judgment are referred to together herein as the "Dissolution Judgment."

29. In the Dissolution Judgment, Defendant and Julie acknowledged a community property debt of $620,000 to Julie's parents, and an additional separate property debt of $75,000 owed by Defendant to Julie's parents. According to the Dissolution Judgment, $250,000 of the community property debt was incurred in connection with the purchase of the 216 Main property. According to the Dissolution Judgment, the balance of the debt was "borrowed over time to pay for the debts associated with [Defendant's] business known as Cover Story, LLC."

30. Defendant did not disclose to Plaintiff the fact that he owed to Julie's parents an amount close to or in excess of $400,000 for loans they had provided in connection with Cover Story and the 216 Main property.

31. Plaintiff is informed and believes and on that basis alleges that in 2009, Defendant and Julie entered into an agreement to sell the 216 Main property, which agreement (the "Main Street Property Agreement") was reflected in a Stipulation and Order entered in their dissolution proceeding on September 17, 2009.

32. Plaintiff is informed and believes and on that basis alleges that in June 2014 the debt that Defendant owed to Julie's parents was assigned to Julie.

33. In July 2014, Julie filed a Request for Order against Defendant in the Dissolution Proceeding demanding among other things a Judgment of Arrears Against

Defendant in Julie's favor for $385,000 plus accrued interest for amounts owing under the Judgment of Dissolution. The Request for Order was ultimately resolved by a Stipulation and Order filed on March 4, 2015, which incorporated the terms of an agreement (the "Settlement Agreement") reached between Defendant and Julie.

34. In the Settlement Agreement Defendant promised to pay Julie $175,000 plus interest (the "Judgment Debt"). The Settlement Agreement further provided that the Judgment Debt would be secured by the assets of Cover Story and that Cover Story would be sold.

35. Defendant completed a bulk sale of the assets of Cover Story's Los Gatos store assets on June 1, 2015. The Transaction Closing Statement identifies Julie as a creditor of Cover Story and indicated a transfer to her of $50,000 from the sale proceeds.

36. Defendant completed a bulk sale of Cover Story's Los Altos store assets on July 27, 2015. The closing statement shows a transfer to Julie of $125,199 from the proceeds.

37. According to Defendant, the net proceeds Cover Story received from the second and final sale of assets were "used to pay any and all prior accumulated debt" of Cover Story. By November 30, 2015, the Cover Story bank account had dwindled to $73.30.

38. Defendant concealed his liquidation of Cover Story from Plaintiff who first learned that Cover Story had been sold when she read about it in November 2015 in a magazine published by the Los Altos Town Crier, a local newspaper.

39. Defendant had represented to Plaintiff that he sold Cover Story in order to

repay the debt he owed to Julie in connection with their divorce and that he is unable to repay the Notes in large part because of that.

40. The amount of unpaid principal on the Notes is $95,187. As of December 14, 2017, the accrued and unpaid interest on the Notes was $14,697, for a total balance due of $109,884 as of December 14, 2017.

## FIRST CLAIM FOR RELIEF
(11 U.S.C. §523(a)(2)(A))

41. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 40 as if fully set forth herein.

42. As alleged above, Defendant made the following misrepresentations and fraudulent omissions in order to induce Plaintiff to lend him money on the Notes.

43. Defendant told Plaintiff that Cover Story was profitable.

44. Defendant told Plaintiff that her first loan of $50,000 would be the largest debt he owed.

45. Defendant represented to Plaintiff that he was acting on behalf of Cover Story when he pursued and accepted the two loans from Plaintiff.

46. Defendant told Plaintiff that she would have an opportunity to become an equity owner in Cover Story.

47. Defendant told Plaintiff that, by investing in Cover Story, she could participate in the growth of Cover Story.

48. Defendant told Plaintiff that he would use the proceeds from the sale of the 216 Main property to pay off his investors.

49. Defendant failed to inform Plaintiff that he owed approximately $400,000 to his ex-wife's parents.

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT** PAGE 11

Case: 18-05008   Doc# 1   Filed: 02/12/18   Entered: 02/12/18 12:06:53   Page 11 of 16

50. Defendant failed to inform Plaintiff that Cover Story was not a sole proprietorship but was a limited liability company.

51. Defendant failed to inform Plaintiff that his ex-wife could force the sale of the 216 Main property.

52. The misrepresentations and fraudulent omissions in paragraphs 43 through 53 made by Defendant, as alleged above, were in fact false and deceptive, and Defendant knew them to be false and deceptive when he made them in order to induce Plaintiff to lend him money on the Notes.

53. The true facts are that Cover Story was not profitable and that Plaintiff's first loan of $50,000 was not the largest debt Defendant owed. The true facts are that Cover Story had already been formed as a limited liability company and that Defendant never intended to allow Plaintiff to become a co-owner. The true facts are Defendant knew he was so far in debt that growth opportunities for investors in Cover Story were illusionary and Defendant knew he would not be able to pay off Plaintiff's loans out of the proceeds of the sale of the 216 Main property. Also, Defendant knew that Plaintiff would not lend him money if she knew Defendant owed $400,000 to his ex-wife's parents, that Cover Story was not a sole proprietorship, and that Defendant's ex-wife could force the sale of the 216 Main property.

54. Plaintiff, at the time these representations and omissions were made by Defendant and at the times Plaintiff took the actions herein alleged, was ignorant of the falsity of Defendant's representations and of the deceptiveness of his omissions, and believed the facts as presented to her by Defendant were true.

55. In reliance on Defendant's false representations and deceptive omissions,

Plaintiff was induced to and did lend money to Defendant on the Notes. Had Plaintiff known the true facts, she would not have lent any money to Defendant.

56. As a direct and proximate result of Defendant's fraud and deceit and the facts herein alleged, Plaintiff has been damaged in an amount according to proof, but not less than $110,000. Plaintiff prays leave to amend this complaint to state the exact amount of her damages when the same are ascertained.

57. In committing the acts alleged herein, Defendant acted with willful and conscious disregard for the rights of Plaintiff and with the intent to cause injury to her, and said conduct constitutes oppression, fraud, and malice, entitling Plaintiff to punitive and exemplary damages in an amount appropriate to punish Defendant. Accordingly, Plaintiff is entitled to, and hereby demands, exemplary and punitive damages in the amount of $50,000 or such other amount as the Court believes appropriate.

58. The debt owed by Defendant to Plaintiff is nondischargeable under 11 U.S.C. §523(a)(2)(A).

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

## SECOND CLAIM FOR RELIEF
(11 U.S.C. §523(a)(6))

59. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraph 1 through 40 and 42 through 58 as if fully set forth herein.

60. Following several text message inquiries from Plaintiff regarding repayment of the Notes, on March 22, 2015, Defendant sent Plaintiff an email indicating that he had run into some financial problems and that his "liquidity has taken a severe

hit." He stated further:

> I am in the process of selling off some of my assets. The first of which should be complete within 60 days. Once complete I will be able to pay off the first note and begin payments on the second.
>
> I have another large asset that is being sold and once completed I will pay off the second note in full. I fully expect it to sell sometime in the next several months.

61. The true fact is that Defendant was not in the process of selling <u>some</u> of <u>his</u> assets. Rather, Cover Story was in the process of selling <u>all</u> of <u>its</u> assets. By this email Defendant led Plaintiff to believe that he was taking actions that would lead shortly to repayment of the Notes. In fact, he was in the process of (a) liquidating the assets of the LLC in which he had induced Plaintiff to invest, and (b) diverting over $175,000 of the proceeds from the sale of the LLC assets to satisfy his personal debt to his ex-wife, which increased the chances that Plaintiff would never be repaid.

62. Had Plaintiff known the true facts, including Defendant's planned bulk sales of the assets of Cover Story, Plaintiff could have taken steps to protect her interests. Defendant's deliberate misrepresentation lulled Plaintiff into a false sense of security and enabled Defendant to dissipate the assets of the business for his own personal benefit.

63. Plaintiff was first damaged insofar as she lent money to Defendant on behalf of Cover Story, which loans were not repaid. However, there was initially an ongoing business, and assets of that business, that represented a potential source of repayment of Defendant's debt. Plaintiff was further damaged by Defendant's deliberate, selfish actions that destroyed the only means by which Plaintiff could likely be made whole by liquidating the assets of Cover Story to pay his personal debt to his

ex-wife.

64. As a direct and proximate result of Defendant's intentional misrepresentations and omissions, Plaintiff has been damaged in an amount according to proof but not less than $110,000. Plaintiff prays leave to amend this complaint to state the exact amount of her damages when the same are ascertained.

65. The actions and conduct of Defendant, as hereinabove alleged, constitute oppression, fraud, and/or malice in that Defendant's representations and omissions were intended by Defendant to cause injury to Plaintiff and/or were committed by Defendant with a willful and conscious disregard of the rights of Plaintiff entitling her to an award of exemplary and punitive damages in the amount of $50,000 or such other amount as the Court believes appropriate.

66. The debt owed by Defendant to Plaintiff is nondischargeable under 11 U.S.C. §523(a)(6).

WHEREFORE, Plaintiff prays for a judgment against the Defendant as follows:

A. For a determination that the debt owed to Plaintiff by Defendant is non-dischargeable pursuant to the provisions of 11 U.S.C. §523, under all Claims for Relief;

B. For the entry by this Court of a Judgment in favor of the Plaintiff in an amount to be ascertained based upon proof under all Claims for Relief;

C. For prejudgment interest at the legal rate;

D. For costs of the suit incurred herein by Plaintiff;

E. For punitive damages based upon the conduct of the Defendant in an amount to be determined by the Court;

F. To the extent permitted, for Plaintiff's attorneys' fees pursuant to the First Note and the Second Note; and,

G. For such other and further relief as this Court deems just and proper.

Dated: February 12, 2018              BINDER & MALTER LLP

                                           By /s/ Julie H. Rome-Banks
                                                 Julie H. Rome-Banks
                                                 Attorneys for Plaintiff